**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL A., | ) | |
| | ) | |
| Plaintiff, | ) | No. 20-cv-4585 |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Keri Holleb Hotaling |
| KILILO KIJAKAZI, Acting Commissioner | ) | |
| of the Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff Michael A.'s[1] appeal of the decision of the Commissioner of

the Social Security Administration ("Commissioner") denying him disability benefits. For the

reasons set forth below, Defendant's motion for summary judgment [Dkt. 24] is GRANTED;

Plaintiff's motion for summary judgment[2] [Dkt. 18] is DENIED. The final decision of the

Commissioner denying benefits is affirmed.

**I.     BACKGROUND**

**A.     Procedural History**

After an unfavorable decision on an earlier application for supplemental security income

("SSI") on January 12, 2017, Plaintiff again applied for SSI on May 25, 2017, alleging a disability

beginning on January 13, 2017, one day after the prior unfavorable decision. [Administrative

Record ("R.") 261-71.] Plaintiff's application initially was denied on October 3, 2017, and upon

reconsideration on January 10, 2018. [R. 142-46, 153-55.] Plaintiff then requested an

---

[1]     In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court
refers to Plaintiff only by his first name and the first initial of his last name(s).

[2]     The Court construes Plaintiff's Brief in Support of Reversing and Remanding the
Commissioner's Decision [Dkt. 18] as a motion for summary judgment.

administrative hearing that occurred on June 17, 2019. [R. 41-85.] Following that hearing, at which

Plaintiff was represented by counsel, Administrative Law Judge ("ALJ") William Spalo issued a

July 15, 2019 decision that Plaintiff was not disabled. [R. 17-34.] On June 9, 2020, the Appeals

Council denied Plaintiff's request for review [R. 1-4], rendering the ALJ's decision the final

decision of the Commissioner, reviewable by the District Court under 42 U.S.C. § 405(g). *See* 20

C.F.R. § 404.981; *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2004). Plaintiff then filed this

lawsuit seeking review of the ALJ's decision [Dkt. 1], which was reassigned to this Court on

August 10, 2023.

### B. Relevant Evidence

Plaintiff sought disability benefits beginning on January 13, 2017, for limitations stemming

from cubital tunnel syndrome, spondylosis, bone spurs, anxiety, hypertension, and an annular disc

tear. [R. 261-71.] Both at the hearing conducted after the initial denial of benefits and in later

medical records, Plaintiff also referenced foot pain, periodic insomnia, and sciatic pain radiating

down his left leg. [*See* R. 50-58.] The ALJ admitted and considered medical records from the

ensuing period. [R. 43-44.] Because Plaintiff argues that the ALJ erred in regards to mental

limitations and physical medical evidence added to the record after the state agency experts

rendered their opinions, the Court below summarizes the expert opinions, additional medical

evidence regarding his physical conditions that Plaintiff submitted after those opinions were

rendered, and the relevant mental health evidence. That evidence is organized in the manner the

ALJ and parties presented it, by condition rather than strict date order.

### 1. Evidence from State Agency Consultants

In July 2017, Dr. Brian Hobard and Licensed Occupational Therapist Ms. Sue Botica

evaluated Plaintiff's functional capacity. They noted that Plaintiff "exhibited signs of submaximal

effort" in that his subjective complaints "did not correlate well with objective signs of difficulty"

such as "changes in posture, movement or lifting abilities to correlate with reported intense pain and inability to continue activity." [R. 500.] Plaintiff reported difficulty standing but demonstrated "little difficulty performing standing dexterity testing." [R. 500] Plaintiff declined to lift more than five pounds due to the possibility of pain. [R. 501.] Plaintiff "continued to refuse" even after Dr. Hobard and Ms. Botica explained to him the difficulty of assessing his abilities without his willingness to try the tests. [R. 501.] They concluded that Plaintiff "generally did not put forth a genuine effort" and had performed "at the sedentary demand levels for work" and could not kneel, do overhead work, balance, squat, or crawl. [R. 502.]

On September 29, 2017, State Agency medical consultant Dr. Vidya Madala opined that Plaintiff was able to perform medium work if limited to only frequent stooping. [R. 114, 116-17.] In January 2018, State Agency medical consultant Dr. Reynaldo Gotanco adopted that opinion. [R. 133.]

As to Plaintiff's mental impairments of depression and anxiety, in September 2017, Ellen Rozenfeld, a consultative PsyD, assessed Plaintiff. She diagnosed Plaintiff with no limitation in understanding, remembering, or applying information and mild limitations in the areas of: interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing himself. [R. 111.] She opined that his "mental impairment is non[-]severe[,] imposing no more than mild limitations in functioning." [R. 112.] In January 2018, State Agency medical consultant Dr. Steven Fritz adopted her opinion. [R. 126-28.] In September 2018, Dr. Roberta Stahnke, a consultative psychological examiner, opined that Plaintiff's psychological symptoms were "not severe enough to interfere with the ability to do work-related activities." [R. 512.]

### 2.    Relevant Evidence from Treating Physicians

On December 18, 2017, Plaintiff reported right wrist pain and a previous diagnosis of cubital tunnel syndrome. [R. 542, 549.] A wrist x-ray was normal, and Plaintiff's range of motion

improved in the next two days, despite continuing tenderness. [R. 542, 546.] In February 2018, Plaintiff saw two doctors and received an MRI that revealed likely chronic degenerative changes; he received a steroid shot, but surgery was not recommended. [R. 601-02, 611.] In March 2018, Plaintiff reported improvements in movement and pain levels but some numbness and tingling. [R. 633.] In April 2018, the Plaintiff reported returning pain less severe than it had been. [R. 650.] He had a full range of motion with some tenderness, and he declined a further injection due to insufficient pain. [R. 650.] In May 2018, Plaintiff had worsening pain and tenderness, and in July 2018, he declined an arthroscopy due to insufficiently severe symptoms. [R. 724, 751.] In September 2018, Plaintiff revealed that a wrist brace had helped decrease pain and agreed to a three-month follow-up. [R. 778.]

In October 2018, Plaintiff reported a ten-minute period of numbness of his right ring and small fingers to Dr. Michael Bednar; Dr. Bednar noted that a 2017 EMG "was read as no evidence of cubital tunnel syndrome," which had been mildly shown in a 2014 EMG. [R. 787.] In November and December 2018, Plaintiff reported incidents of numbness and tingling in both hands, worse on the right. Plaintiff agreed to a decompression of the ulnar nerve at the right elbow and right wrist arthroscopy, performed in January 2019. [R. 880.] At a post-surgical follow-up in February 2019, Plaintiff reported overall improvement with stiffness in his wrist and pain upon attempting to flex past 30 degrees; Plaintiff was prescribed physical therapy. [R. 969-71.] The physical therapist recorded on February 27, 2019 that Plaintiff had "met all goals set for him in the initial visit," including having 50-pound bilateral grip strength and full active range of wrist motion in all directions; Plaintiff, moreover, was able to "lift items . . ., manipulate items with fingers, . . . chop vegetables" and "key board [sic]," and reported gradual improvement with turning doorknobs. [R. 985, 986, 988-89.]

4

At the June 17, 2019 administrative hearing, Plaintiff testified that his surgical scars had only recently healed, he still had numbness in his wrist, and his pain had improved since the surgery. [R. 56, 72-73.] He could pick items up but had difficulty with twisting motions. [R. 55-56.] Although right-handed, Plaintiff had been using his left hand for some daily activities, like eating and brushing his teeth. [R. 74.]

As for Plaintiff's neck and back, before the alleged onset period of his disability, Plaintiff was diagnosed with spondylosis, degenerative disc disease of the lumbar spine, degenerative disc disease of the cervical spine, and sciatica. [*See* R. 400, 422, , 424-26, 429-30.] An October 2017 physical examination was generally normal. [R. 590.] In March of 2018, Plaintiff complained of neck and low back pain, indicated that he did not need to take medication daily, and expressed that he was "not interested in injections," although an earlier injection had given him five months' relief. [R. 640, 641.] In May 2018, he visited a new primary care provider for foot pain, and he presented limping and hunching, and reported pain with neck rotation and musculoskeletal tenderness, along with limited range of motion. [R. 579.] As of November 2018, Plaintiff reported pain at a seven out of ten after cleaning snow off his car but continued to decline steroid injections, physical therapy, or acupuncture. [R. 801-02.]

During the 2019 hearing, Plaintiff testified that he had discontinued epidural injections, which had offered him short-term relief from back pain, after an incident in which he "moved" while an injection was in progress. [R. 52-53.] On "real bad days," Plaintiff ingested Tramadol for his pain, and he took Demerol at other times. [R. 53.]

On May 14, 2018, Plaintiff reported a right great toe injury—he had broken the toe more than a decade earlier and then reinjured it. [R. 579.] On August 22, 2018, Plaintiff saw a podiatrist, Dr. Staskiewicz, who recommended a carbon fiber plate in a supportive shoe, permissive icing for ten to fifteen minutes each evening, and daily use of aspercreme or biofreeze. [R. 769.] On October

25, 2018, Dr. Staskiewicz recorded that Plaintiff's pain remained stable, albeit slightly worse in cold weather, despite inconsistent icing, non-use of topical pain relievers, and inability (reportedly due to cost) to purchase a carbon fiber plate. [R. 793.] Dr. Staskiewicz reiterated her recommendation of consistent use of icing and topical pain relievers and recommended a stiff-soled shoe. [*Id*.] Plaintiff rejected a corticosteroid shot. [*Id*.] At the June 17, 2019 hearing, Plaintiff testified that, although he had not broken his toe when he reinjured it in 2018, it still hurt, had "real bad arthritis," and bothered him on damp days. [R. 50.]

Plaintiff also has been diagnosed with depression and anxiety. [R. 403-04, 512, 555.] He presented to his treaters with reported anxiety and some depressive symptoms at a handful of appointments in 2017 and was prescribed and refilled medications related to those symptoms. [R. 412, 407, 403, 405, 466, 525, 523, 550-52.] He saw Dr. Kestenberg approximately quarterly in 2018. At the appointments in early 2018, Dr. Kestenberg observed slight to moderate psychomotor agitation but noted no psychomotor agitation and no new problems at the last two quarterly appointments. [R. 555-62.]

C.      **Social Security Regulations and Standard of Review**

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. Pursuant to the Social Security Act, a person is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1). ALJs are required to follow a sequential five-step test to assess whether a claimant is legally disabled. The ALJ must start by determining whether: (1) the claimant is currently engaged in substantial gainful activity; (2) the claimant has a severe impairment; and (3) the severe impairment meets or equals one considered conclusively disabling such that the claimant is impeded from performing basic work-

related activities. 20 C.F.R. §§ 404.1520, 416.920(a)(4)(i)-(v). If the impairment(s) does meet or equal this standard, the inquiry is over; the claimant is disabled. 20 C.F.R. § 416.920(a)(4). If not, the evaluation continues and the ALJ determines whether (4) the claimant is capable of performing his past relevant work. *Cannon v. Harris*, 651 F.2d 513, 517 (7th Cir. 1981). If he is not capable of performing his past relevant work, the ALJ must consider (5) the claimant's age, education, and prior work experience and evaluate whether he is able to engage in another type of work existing in a significant number of jobs in the national economy. *Id*. At the fourth and fifth steps of the inquiry, the ALJ is required to evaluate the claimant's residual functional capacity ("RFC") in calculating which work-related activities he is capable of performing given his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). In the final step, the burden shifts to the Commissioner to show there are significant jobs available that the claimant is able to perform. *Smith v. Schweiker*, 735 F.2d 267, 270 (7th Cir. 1984).

On review, the Court does not "merely rubber stamp the ALJ's decision," but "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[,]'" *id*. (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938) (further citation omitted)); *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021)), and the Court must affirm even if "reasonable minds could differ" or the evidence would support another conclusion. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2018); *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004).

Under this standard, the Court is not to try the case de novo or supplant the ALJ's findings with the Court's assessment of the evidence, whether as to credibility or conflicting record

evidence. *Young*, 362 F.3d at 1001; *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000). The ALJ need only "'minimally articulate'" the "'justification for rejecting or accepting specific evidence of a disability'" to satisfy the "lax" standard. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008) (quoting *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004)).

> ### D. The ALJ's Decision

The ALJ analyzed Plaintiff's claims using the above five-step process. *See* 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of January 13, 2017. [R. 22.] At step two, the ALJ concluded that Plaintiff had the following severe impairments: cubital tunnel syndrome in the right arm; degenerative disc disease of the lumbar spine with sciatica on the left; and degenerative disc disease of the cervical spine. [R. 23-25.] He also considered evidence of Plaintiff's other reported impairments, including his mental limitations, insomnia, history of tinnitus, history of marijuana use, spondylosis, right great toe pain, and complaints of pain in his left hand or wrist. [R. 23, 25-26, 27, 30.] The ALJ concluded at step three that Plaintiff's impairments, considered alone or together, do not meet or medically equal any listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. [R. 25-26.]

Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following additional limitations: frequent stooping, only occasional handling and fingering with the right hand, and avoiding concentrated exposure to extreme cold, wetness, or humidity. [R. 26-32.] In reaching that conclusion, he found the opinion rendered by Dr. Hobard and Ms. Botica to be of little to no persuasive value chiefly because their conclusions were inconsistent with both their assessment of Plaintiff's lack of effort in the one-time evaluation and the underlying treatment records. [R. 32.] The ALJ found the opinion of Dr. Madala that Plaintiff could perform medium work, which was adopted by the State Agency

medical consultant Dr. Gotanco, to be of some persuasive value, given their expertise in the evaluation of disability claims and their use of examination findings of record in support of their opinions. [R. 32.] The ALJ also considered Plaintiff's testimony, his mother's report of his functionality, which the ALJ judged as not persuasive, and Plaintiff's recent medical records. [R. 32.] The ALJ's weighing of the foregoing, he explained, led to his "find[ing] that" the "entire record . . . supports and is consistent with limiting the claimant to a range of light work with additional postural, manipulative, and environmental limitations."[3] [R. 32.]

At step four, the ALJ determined that Plaintiff was not capable of performing his past work, but, at step five, the ALJ determined that other jobs existed in significant numbers in the national economy Plaintiff could perform considering his RFC, age, education, and work experience. [R. 33-34.] The ALJ therefore concluded Plaintiff was not disabled under the Social Security Act. [R. 34.]

## II.     ANALYSIS

Plaintiff argues that the ALJ erred in the following ways: (1) failing to include any accommodations for mental limitations in the RFC despite finding that Plaintiff had mild mental limitations in several areas; (2) insufficiently developing the record by failing to obtain an updated assessment of Plaintiff's physical functioning; and (3) inadequately addressing Plaintiff's subjective description of his symptoms. As discussed below, the Court rejects these arguments and finds that the ALJ adequately supported his decisions.

---

[3] Plaintiff also had reported some symptoms in his left wrist, but the ALJ noted that those symptoms were not inconsistent with light work.

A.       **The ALJ Did Not Err in Formulating the RFC as to Plaintiff's Non-Severe Mental Limitations**

Plaintiff first contends that the ALJ did not properly account for mild mental limitations stemming from depression and anxiety because the ALJ did not include additional restrictions to accommodate Plaintiff's mental impairments in the RFC. [Dkt. 18, at 3-7.]

In considering Plaintiff's asserted mental impairments, the ALJ weighed the record evidence of Plaintiff's functioning in each of the four so-called "Paragraph B" criteria relevant to such considerations, *see* 20 C.F.R. § 416.920a; Social Security Ruling ("SSR") 96-8p, and determined that Plaintiff had no limitation in understanding, remembering, or applying information and only mild limitations in the areas of: interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing himself. [R. 23-24.] The ALJ emphasized that Dr. Rozenfeld had assessed Plaintiff with those mild limitations stemming from his conditions, that State Agency medical consultant Dr. Fritz adopted her opinion, and that Dr. Roberta Stahnke, the consultative psychological examiner, opined that Plaintiff's psychological symptoms were not severe enough to interfere with the ability to do work-related activities. [R. 23, 24; *see also* R. 105-17; 119-33, 507-12.] The ALJ acknowledged Plaintiff's diagnoses of depression and anxiety and his reports of anxiety attacks in stressful situations. [R. 24.] The ALJ, though, credited the professional assessments, bolstered by his analysis of Plaintiff's activities, which included driving, preparing his own meals, managing his own finances, learning and utilizing social media and a ham radio, regular church attendance, frequent telephone conversations, and performing his own self-care. [R. 23-25.] The ALJ emphasized that these activities variously demonstrated abilities to focus, apply spatial reasoning, follow rules, make decisions, maintain awareness of surroundings,

interact with others, concentrate, persist in tasks, and keep pace.[4] [R. 23-25.] The ALJ concluded that Plaintiff's "medically determinable impairments of depression and anxiety, considered singly and in combination, do not cause more than a minimal limitation in [his] ability to perform basic mental work activities and are therefore non[-]severe." [R. 23; *see* R. 25.] The ALJ formulated an RFC that did not include non-exertional limitations to accommodate Plaintiff's mild mental limitations. [R. 26.]

Because the RFC contains no non-exertional limitations to accommodate Plaintiffs' mild limitations in three Paragraph B areas, Plaintiff labels the ALJ's RFC "inconsistent with the ALJ's own findings[.]" [Dkt. 18, at 4.] While Plaintiff is correct that an ALJ must, in crafting the RFC, "consider the combination of all limitations on the ability to work, including those that do not individually rise to the level of a severe impairment," *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010), the existence of mild mental limitations does not always necessitate the inclusion of non-exertional accommodations in the RFC. *See, e.g., Applewhite v. Colvin*, 54 F. Supp. 3d 945, 954 (N.D. Ill. 2014) ("The ALJ clearly considered her mental impairment in his RFC analysis, but she concluded that the mild limitations that resulted were not significant enough to warrant the imposition of any additional non-exertional RFC limitations."). An ALJ properly may conclude on a given record that no non-exertional limitations in the RFC are required, if he "'build[s] an accurate and logical bridge' between the evidence and his conclusion." *Kathleen C. v. Saul*, No. 19 C 1564, 2020 WL 2219047, at *3 (N.D. Ill. May 7, 2020) (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)).

---

[4] The ALJ did not, though, improperly purport to equate Plaintiff's activities with an ability to engage in full-time work; the ALJ instead considered evidence of Plaintiff's functional abilities in rating his degree of limitation as to the Paragraph B criteria.

Here, the ALJ indicated that the RFC he fashioned "reflects the degree of limitation [he] []

found in the "paragraph B" mental function analysis and that he had "considered the combined

effects of the severe and not severe impairments in assessing" the RFC. [R. 25.] Within his RFC

analysis, he also addressed Plaintiff's physical impairments in detail and repeated his conclusion

that Plaintiff does not have a severe impairment stemming from mild mental limitations in three

of the four Paragraph B areas. [R. 25, 26-32.] The ALJ, though, did not reiterate much of the

Paragraph B evidence, including his evaluation of Plaintiff's activities, or another evidentiary

piece he had mentioned four times within his Paragraph B analysis—that Dr. Stahnke had opined

that Plaintiff's symptoms were "not severe enough to interfere with his ability to do work-related

activities." [R. 24, 25.]

It would have better served the parties and the Court had the ALJ more clearly spelled out

the reasoning spanning between his analysis of that Paragraph B evidence and his choice not to

include within the RFC any non-exertional accommodation(s) for Plaintiff's mild mental

limitations. That said, under the narrow circumstances of this case, the Court has no difficulty

following the ALJ's logical bridge from the Paragraph B evidence—including the opinions and

evaluations of Drs. Rozenfeld and Fritz, Plaintiff's activities, and Dr. Stahnke's pointed opinion

that Plaintiff's psychological symptoms would not affect his ability to do work-related activities—

to the RFC that contains no non-exertional limitations to accommodate Plaintiff's mild Paragraph

B limitations. *See Kathleen C.*, 2020 WL 2219047, at *3-4 (noting that ALJ had not ignored but

had twice noted the plaintiff had been diagnosed with depressive disorder and agreeing with the

Commissioner that "'a diagnosis does not establish a functional limitation'"); *James G. v. Saul*,

No. 18 C 4794, 2019 WL 4305518, at *6-7 (N.D. Ill. Sept. 11, 2019) ("find[ing] no error in the

ALJ's consideration of this [Paragraph B] evidence or his reasoning" where "Plaintiff points to no

evidence that he had any work related mental limitation other than his own endorsements of

irritability, impaired sleep patterns, and feeling down"); *see also Brookins v. Saul*, No. 17 C 6708, 2020 WL 4365909, at \*7 (N.D. Ill. July 30, 2020) ("The Court is especially reluctant to nitpick the record where, as here, no doctor recommended a non-exertional limitation."). That the ALJ "weighed the evidence in a different way than [P]laintiff would have liked" is not grounds for reversal. *Bertha M. v. Saul*, 395 F. Supp. 3d 963, 972 (N.D. Ill. 2019).

Plaintiff has not established reversible error in the ALJ's mental RFC determination. The Court will not overturn the ALJ's decision on this basis.

### B. The ALJ Did Not Err In Not Supplementing the Record by Ordering a Reassessment of Plaintiff's Physical Functioning

Plaintiff deems the ALJ's conclusion that he should be limited to light work to be "based upon outdated opinions of non-examining physicians who did not review the complete medical file" and the ALJ's "own lay interpretation of the remaining medical data." [Dkt. 18, at 7.] In support of this argument, Plaintiff details medical records he submitted after the opinions of the state agency physicians, most of which the ALJ specifically mentioned,[5] and observes that the records reference diagnostic imagery, clinical findings, and a surgery.

As the Commissioner points out, state-agency evaluators' assessments by necessity predate any later medical evidence admitted into the proceedings. The mere fact that additional post-assessment medical records are added, though, does not, standing alone, suggest any deficiency with such earlier-rendered state-agency evaluator assessments.[6]

---

[5] The ALJ was not, of course, required to engage with each bit of evidence. *Benito M. v. Kijakazi*, No. 20 C 5966 , 2022 WL 2828741, at \*8 (N.D. Ill. July 20, 2022) ("An ALJ may not ignore an entire line of evidence contrary to her ruling" but "'need not discuss every detail in the record as it relates to every factor.'") (quoting *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022)).

[6] Plaintiff frames this argument as a challenge to the formulation of the RFC. To the extent that it might be read as a challenge to the equivalency, as noted above, it is Plaintiff's burden to establish that his impairments were medically equivalent to a listing. *Young*, 957 F.2d at 389. He points to no opinion of equivalency from any source. The ALJ was not obliged to supplement the record absent a belief that the evidence would "reasonably support a finding that the individual's

The ALJ, moreover, was entitled to infer, in the absence of any presentation of medical equivalency evidence or request for a reassessment, that Plaintiff did not believe that such evidence would aid his case. *See Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 679 (7th Cir. 2010) ("[A]lthough ALJs bear some responsibility for developing the administrative record, . . ., they are also free to assume that a claimant represented by counsel has presented her strongest case for benefits[.]"); *Alejandrina A. v. Kijakazi*, No. 20 C 4089, 2023 WL 2539239, at *8 (N.D. Ill. Mar. 16, 2023) (rejecting claimant's argument that, although she did not provide an expert opinion of medical equivalence, "the ALJ had a duty to 'recontact her treating providers or call upon an expert, to seek clarification on the issue of listing equivalence'" because claimant "was represented by an attorney," knew "of the state agency consultants' findings that her impairments did not medically equal [the relevant listing]," and, among other things, had not "ask[ed] the ALJ to recontact the state agency consultants, despite continuing to add other evidence to the record"). Plaintiff, through counsel, knew as of January 2018 that Dr. Hobard and Ms. Botica had qualified their assessment due to Plaintiff's unwillingness to perform parts of their test and that Dr. Gotanco had reaffirmed the opinion of Dr. Madala evaluating Plaintiff as capable of performing medium work, yet Plaintiff did not inform the ALJ of any belief that the opinions of Plaintiff's functioning had been rendered outdated by other record evidence.

Plaintiff makes much of the fact that the ALJ nevertheless accepted his additional evidence so far as to limit Plaintiff's RFC to light instead of medium work. In Plaintiff's view, this must mean that the ALJ made medical judgments outside his field, given that some of the additional records referred to diagnostic imagery, clinical findings, and at least one medical procedure. But the ALJ here did not attempt to discern from complex medical diagnostic imagery an onset period

---

impairment(s) medically equal[ed] a listed impairment." SSR 17-2P, 2017 WL 3928306, at *4 (Mar. 27, 2017); *see also* SSR 96-6P, 1996 WL 374180, at *3-4 (July 2, 1996).

of Plaintiff's condition or to reconcile conflicting diagnostics, which distinguishes this case from *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018). Instead, despite concluding that Plaintiff had not shown medical equivalence, the ALJ was persuaded by Plaintiff's additional evidence that his impairments warranted additional accommodations within the RFC. This was within his purview. *See Karla J.B. v. Saul*, No. 19 C 50019, 2020 WL 3050220, at *8 (N.D. Ill. June 8, 2020) ("That the ALJ limited Plaintiff's RFC to a lesser degree than these medical experts believed necessary also indicates that she considered and credited Plaintiff's testimony that she continues to have tremor related symptoms and that they have not fully resolved."); *Poole v. Colvin*, No. 12 C 10159, 2016 WL 1181817, at *8 (N.D. Ill. Mar. 28, 2016) (rejecting claimant's argument that ALJ's finding of residual functional capacity more limited than physician's recommendation amounted to "ALJ 'substitut[ing] his own lay judgment for that of a medical expert'" and holding that "ALJ was permitted to" determine, "despite the conclusions of medical experts finding Plaintiff capable of more strenuous work," that "Plaintiff's statements as to the effects of his symptoms [were] partially credible, and on that basis [] that Plaintiff's impairments limited his RFC to an extent greater than that specified by the medical experts but lesser than that claimed by Plaintiff himself"); *see also* 20 C.F.R. § 404.1529(c) (providing that ALJs consider medical opinions and "objective medical evidence" in "determining the extent to which [a claimant's] symptoms limit [the claimant's] capacity for work").

The Court can trace the ALJ's reasoning through discounting the opinions of Dr. Hobard and Ms. Botica, finding the opinion of Dr. Madala (reaffirmed by Dr. Gotanco) to be somewhat persuasive, to then formulating the RFC to accommodate Plaintiff's impairments, in a way warranted by the additional medical evidence. Whether the Court might have weighed that additional evidence differently is of no matter, as the Court may not accept Plaintiff's invitation to substitute its judgment for the ALJ's. Plaintiff has not established the ALJ erred in failing to request

a reassessment of Plaintiff's physical functioning or in formulating the RFC without such a reassessment.

> **C.** **The ALJ Adequately Assessed Plaintiff's Subjective Statements**

Finally, Plaintiff faults the ALJ's assessment of Plaintiff's subjective assertions about his symptoms. The regulations set forth a two-step process for evaluating a claimant's statements about his impairments. *See* 20 C.F.R. § 416.929. An ALJ first determines whether a medically determinable impairment "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 416.929(a). If so, the ALJ then "evaluate[s] the intensity and persistence" of the claimant's symptoms and determines how they limit the claimant's "capacity for work." 20 C.F.R. § 416.929(c). In applying the second step, the ALJ assesses whether medical evidence substantiates the claimant's symptoms. *See* SSR l6-3p, 2017 WL 5180304, at *4 (Oct. 25, 2017). If medical evidence does not confirm the intensity and persistence of the claimed symptoms, the ALJ considers a list of non-exhaustive factors. *See id*. An ALJ's assessment of a claimant's subjective statements of symptoms need not be flawless and is entitled to deference unless it is "patently wrong," which is a "high burden." *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015); *Turner v. Astrue*, 390 F. App'x 581, 587 (7th Cir. 2010). Only when an ALJ's assessment lacks *any* explanation or support will a court declare it to be "patently wrong." *Elder*, 529 F.3d at 413-14 (citation and internal quotation marks omitted).

Plaintiff argues that the ALJ did not "articulate support for th[e] conclusion" that the objective medical evidence did not support the limitations Plaintiff alleged. [Dkt. 18, at 14.] The Court disagrees.

The ALJ explained his consistency determinations, noting the conservative treatment recommendations for most of Plaintiff's conditions at most appointments and the contrast between Plaintiff's complaints and the generally non-aggressive treatments he opted to pursue (as well as

Plaintiff's neglect in performing some recommended treatments. [*See* R. 31 ("I have considered the above complaints, including the claimant's conservative treatment for pain and opinion evidence, and I have limited the claimant to a range of light work[.]").]

Through his lengthy detailing of Plaintiff's medical history, in fact, the ALJ highlighted multiple instances of Plaintiff being prescribed conservative treatments for his toe, wrist, and neck and back pain, and reporting that some treatments, such as medications or injections, had been effective at managing his pain; the ALJ stressed that Plaintiff declined to pursue other pain-management mechanisms, such as steroid injections, icing, or topical pain medications. [*See* R. 27-31, 442, 641, 650, 751, 769, 793.] Even in late 2018, Plaintiff declined steroid injections, physical therapy, or acupuncture for his neck and lower back pain. [R. 31, 801-02.] The ALJ was entitled to draw inferences from evidence of conservative treatments and inconsistencies between Plaintiff's description of his symptoms and the overall record and treatment. *See, e.g.,* SSR 16-3PP, 2017 WL 5180304, at *9 (S.S.A. Oct. 25, 2017) ("[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record."); *Britt v. Berryhill*, 889 F.3d 422, 426 (7th Cir. 2018) ("Discrepancies between the objective evidence and self-reports may suggest symptom exaggeration.").

Further, as the Commissioner notes [Dkt. 24, at 12], it is clear the ALJ partially credited Plaintiff's subjective description of his symptoms. While the ALJ did not limit Plaintiff's RFC as much as Plaintiff would have liked, Plaintiff's testimony and records convinced the ALJ to limit Plaintiff to light work instead of the medium work Dr. Badala opined Plaintiff could perform. *See*

*Poole*, 2016 WL 1181817, at *8 (noting that "[i]t was because of and not in spite of [Plaintiff's] testimony that the ALJ limited her to a more restrictive residual functional capacity").

The ALJ was entitled to determine that Plaintiff's subjective statements about his symptoms conflicted with the medical record. *See Cheryl P. v. Kijakazi*, No. 20 C 2665, 2022 WL 16780930, at *6 (N.D. Ill. Nov. 8, 2022) (finding ALJ's conclusion regarding subjective statements was not patently wrong where ALJ had found that the subjective symptom statements were "at odds with" some medical evidence, and medical evidence was "inconsistent with" or "conflicted" with her subjective statements). Viewing the record as a whole, the ALJ had the opportunity to observe Plaintiff testifying and provided valid reasons for partially discounting Plaintiff's subjective statements as to his symptoms and fairly determined Plaintiff had a residual functional capacity for light work with additional limitations. While Plaintiff ably points out several instances where there was evidence that could have supported an alternative finding, none of it rises to the level of a patently wrong determination by the ALJ. Accordingly, the Court will not reverse the ALJ's decision based upon the ALJ's analysis of Plaintiff's subjective symptoms.

## III.  CONCLUSION

For the reasons detailed above, the Court finds the ALJ's decision to be supported by substantial evidence. Defendant's motion for summary judgment [24] is GRANTED; Plaintiff's motion for summary judgment [18] is DENIED. The final decision of the Commissioner denying benefits is affirmed.

ENTERED: September 28, 2023

_____

Hon. Keri L. Holleb Hotaling,
United States Magistrate Judge

18